Barnes *v.* Perine.

———•·◦·•———

BARNES and others, Trustees of the First Presbyterian Church of Glens Falls, *vs.* PERINE.

A subscription paper, for the erection of a church edifice, not being a contract within the statute of frauds, the consideration on which it is made need not be expressed in the instrument itself. Yet it cannot be upheld as a common law agreement, unless it be shown to be founded on an adequate consideration.

The actual consideration may be shown by parol.

The rule prevails, without exception, that when no consideration is expressed in a written contract not within the statute of frauds, parol evidence is admissible, to show the actual consideration.

Where a subscription paper did not set forth any consideration, but the com-

Barnes *v*. Perine.

plaint averred that the consideration of the subscription by the defendant and others was the agreement of the plaintiffs as trustees of a religious society, to remove the old church edifice and to build a new one on the same site, and it alleged that in consideration of the subscriptions the trustees had removed the old building and erected a new one in its place, at a cost of several thousand dollars; and the proof established the truth of the averment; *Held*, that the trustees were entitled to recover, in an action brought upon the subscription paper. HAND, J. dissented.

THIS was an appeal by the defendant, to the general term, from the decision made by Justice Paige, at special term, and reported in 9th Barbour's Rep. p. 202.

*W. A. Beach*, for the appellant.

*E. H. Rosekrans*, for the respondents.

WILLARD, P. J. The statement of this case is correctly made in 9th Barbour, 202 et seq. I concur fully in the result at which Mr. Justice Paige arrived, and am for affirming the judgment. The opinion is well sustained by authority, and is a sound exposition of the law. I will add a few remarks on one branch of the case.

The subscription paper on which the action is founded, is not a contract within the statute of frauds. (2 *R. S.* 135, § 2.) There is therefore no statutory requirement that the consideration on which it was made should be expressed in the instrument itself; as a common law agreement, however, it cannot be upheld unless it be shown to be founded on an adequate consideration. So generally is this principle understood, that it rarely happens that this kind of contract is drawn, without expressing on its face, the consideration by which the subscribers are moved. But if the consideration be wholly omitted, or defectively expressed, the admissibility of evidence showing the actual consideration does not infringe the general rule of the common law, that parol evidence is inadmissible to contradict, or vary, or add to the terms of a written contract. (1 *Phil. Ev.* 548, 561.) It is an established rule, says Phillipps, (*Id. p.* 549,) that a party may aver another consideration, which is con-

Barnes v. Perine.

sistent with the consideration expressed; and *a fortiori*, adds Lord Coke, the averment may be made, when no consideration is mentioned, &c. (*Bedell's case*, 7 *Rep.* 40. *Peacock* v. *Marks*, 1 *Ves.* 128. *Bridgman's Index*, 433, 434, § 32, *decided by Lord Hardwicke*.) This doctrine is well settled in this state. (*Tobey* v. *Barber*, 5 *John.* 68. *Haddock* v. *Kelsey*, 3 *Barb. S. C. Rep.* 100. *Frink* v. *Green*, 5 *Id.* 455. *Egleston* v. *Knickerbacker*, 6 *Id.* 458.) The cases on this subject in our courts will be found referred to in those cited. The rule prevails without exception, that when no consideration is expressed in a written contract not within the statute of frauds, parol evidence is inadmissible to show the actual consideration.

The subscription paper in this case does not set forth any consideration. The complaint avers that the consideration of the subscription of the defendant and others was the agreement of the trustees to build the church edifice referred to in the paper, and it avers that in consideration of the subscription of the defendants and others the trustees removed the old church and erected a new one upon the same lot, at an expenditure exceeding six thousand dollars. The proof establishes the truth of this averment. The case then stands the same as if the subscription paper had said on its face that the undersigned promise to pay the sums set opposite to their names to the trustees, if the latter will remove the old church at Glen's Falls and erect a new one on the same lot, costing at least five thousand dollars. Here is a good consideration for the promise, and on showing performance on the part of the trustees, they would be entitled to recover. They showed on the trial the consideration of the agreement and their own performance, and were therefore entitled to recover.

There were several other views taken of this case by the learned judge, in which I concur, but the foregoing is decisive of the action.

The judgment should be affirmed.

CADY, J. and C. L. ALLEN, J. concurred.

HAND, P. J.   I am quite willing that this judgment should be sustained if it can be done legally ; but I regret that I am unable to concur with my brethren.   The judge who tried the cause examined the authorities with his usual industry, but it seems to me that his conclusions are opposed to the principles settled by the case of *Hamilton College* v. *Stewart.* (2 *Denio,* 403, 1 *Comst.* 581.)   *McAuley* v. *Billenger,* (20 *John.* 89,) is very much relied upon, and was so in *Stewart* v. *Hamilton College.*   Chief Justice Nelson stated they were not distinguishable. (2 *Denio,* 490.)   And yet the case of *Hamilton College* v. *Stewart* was reversed by the court for the correction of errors, and that decision was approved in the court of appeals.   If the two cases were not distinguishable, *McAuley* v. *Billenger* is no longer law.   The terms of the subscription in the latter case are not given, and it is very probable the defendant had some interest in the property repaired.   But, if it was a gratuitous promise to pay so much for repairing the church, the learned judge was right, and it may be regarded as overruled.   Whatever was supposed to be the law before, since *Stewart* v. *Hamilton College* there can be no doubt that the rule in relation to this class of contracts is the same as in all others.   There must be consideration and mutuality.   A naked promise to give for literary, religious or charitable purposes, cannot be enforced. The learned judge, who tried this cause, conceded that if it stood upon the subscription paper alone, the action could not be maintained, unless there is a distinction between a promise to promote the interests of religion, and a like promise for the diffusion of knowledge and the advancement of science ; "for," he adds, "the instrument in question contains no undertaking on the part of the corporation or its trustees or agent, as a consideration for the promise of the defendant."   There can be no doubt of the correctness of this construction.   The promise was to pay to the trustees of the church, or a building committee, to be appointed by the subscribers, and for the purpose of building a church. By the terms of the contract, the payee or promisee was not certain, as the payments were to be made to the trustees, or a building committee, that then had no existence ; and no one did

Barnes *v.* Perine.

at the time, or undertook to do, any thing whatever, in consideration of the promise, not even to expend the money in building; nor were the subscribers to receive individually or directly any benefit.

The chancellor, in *Stewart* v. *Hamilton College*, thought there was no difficulty in finding a good and sufficient consideration on the ground of a corresponding promise made by others; and that from the time of *Dutton* v. *Poole*, (2 *Lev.* 210,) the party for whose benefit the promise is made may sue. Every valid contract rests upon some legal principle. And no imperfect obligation is sufficient. No doubt mutual promises are a sufficient consideration, between the parties. But as to third persons, the subscription and acts under it should be sufficient to make a partnership, or there should be a direct contract. (*Wood* v. *Duke of Argyle*, 6 *M. & Gr.* 928. *Walstat* v. *Spottiswode*, 15 *M. and W.* 501. *Watson* v. *E. of Charlemont*, 12 *Q. B.* 851. *Wantner* v. *Sharp*, 4 *C. B.* 404.)

*Dutton* v. *Poole*, perhaps can hardly be considered in all respects, law in England, at the present day. (*Chitty on Cont.* 54 *et seq.*) A promise to pay, out of the funds of the debtor may be an original promise. (*Barker* v. *Bucklin*, 2 *Denio* 45. *Farley* v. *Cleveland*, 4 *Cow.* 432. *Gold* v. *Phillips*, 10 *John.* 412. *Kingsley* v. *Balcome*, 4 *Barb.* 131. *Burge on Surety*, 28.) So on a promise to one for the benefit of another, the latter can sue, where he may treat the promissor, as his agent. (*Chitty on Cont.* 55.) But a promise of a gift is void; and it makes no difference that each of several persons makes such a promise at the same time. In this case the plaintiffs sustained no loss or inconvenience, and incurred no obligation, and no benefit resulted to the defendant. If the subscribers had so contracted with each other, as to make their promises mutual, it would not have followed that there would be any privity of contract between them and the plaintiff.

But it is said the defendant afterwards attended the meetings of the congregation and of the subscribers. As the contract was void, in order to make it binding upon him he must have done some act, which estops him from insisting that it is void; or he

Barnes *v.* Perine.

must have made a new contract. But I find no evidence of either. We are not informed except in the most general way, what part the defendant took at the meetings on the 18th, 22d and 24th of April, 1848. On the 22d of April, it appears he was present, but a witness states that "he expressed no other dissent to the proceedings of the meeting than the rest of the minority." And he *thought* the defendant approved of the proceedings on the 24th. On the 28th of April $5000 had not been subscribed; and probably not on the 24th; and it is very clear, that not one dollar of liability had been incurred by any one until after that day. Indeed, I do not ascertain from the case, that these plaintiffs ever incurred any debt or liability, or expense in the matter; but there is proof tending to show they did not. And if they had done so, merely attending the meeting of the subscribers during the preliminary proceedings, would hardly give validity to a contract void for want of consideration. (*Dickinson* v. *Valpy*, 10 *B. & C.* 128. *Bourne* v. *Freeth*, 9 *Id.* 632. *Fox* v. *Clifton*, 6 *Bing.* 776. *Wantner* v. *Sharp*, 4 *C. B.* 404. *Walstat* v. *Spottiswode*, 15 *M. & W.* 501. *And see Reynoll* v. *Lewis*, *Id.* 517.) The performance of the labor afterwards, of itself was not sufficient. (*Utica and Schenectady Railroad Co.* v. *Brinckerhoff*, 21 *Wend.* 139. *Livingston* v. *Rogers*, 1 *Caines*, 583. *Chitty on Cont.* 15, *and notes.*)

Judgment affirmed.

[FULTON GENERAL TERM, September 6, 1852. *Willard*, *Hand*, *Cady* and *C. L. Allen*, Justices.]